MARC E. MAYER (SBN 190969)
  mem@msk.com
ALEXA L. LEWIS (SBN 235867)
  all@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff,
LICENSING IP INTERNATIONAL S.AR.L.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LICENSING IP INTERNATIONAL S.AR.L., a Luxembourg limited liability company,<br><br>              Plaintiff,<br><br>       v.<br><br>MICHELLE K. LEE, in her official capacity as Director of the United States Patent and Trademark Office,<br><br>              Defendant. | CASE NO.  2:15-cv-02494<br><br>**COMPLAINT FOR APPEAL AND DE NOVO REVIEW OF DECISION OF TRADEMARK TRIAL AND APPEAL BOARD**<br><br>**Demand For Jury Trial** |

Plaintiff LICENSING IP INTERNATIONAL S.AR.L. ("Licensing IP" OR "Plaintiff") for its Complaint against Defendant MICHELLE LEE, in her official capacity as Director of United States and Patent and Trademark Office ("Defendant"), states as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. § 1071(b)(1) and 1121(a).

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1361 and 1391(e) because the a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, the action does not involve real property, and the defendant is an officer of the United States or any agency thereof acting in her official capacity.

## II.     THE PARTIES

3.     Plaintiff LICENSING IP INTERNATIONAL S.AR.L. is a Luxembourg limited liability company with a principal place of business at 32 Boulevard Royal, Luxembourg, Luxembourg   L-2449, and is a successor in interest to Manwin Licensing International Sàrl, the Appellant in *In re Manwin Licensing International Sàrl*.   Licensing IP's affiliates and licensees include Playboy Plus Entertainment, Inc., which has its principal place of business in Los Angeles, California.

4.     Upon information and belief, Defendant is Michelle Lee, in her official capacity as Director of United States and Patent and Trademark Office.

Mitchell
Silberberg &
Knupp LLP

6760072.1

2

## III.   NATURE OF ACTION

5.     This is an action for judicial review of a final decision of the Trademark Trial and Appeal Board ("TTAB") under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

## IV.   FACTUAL BACKGROUND

6.     On August 11, 2011, Licensing IP's predecessor filed Application Serial No. 85/396049 at the United States Patent and Trademark Office ("USPTO"), seeking registration of the mark JUICYBOYS for use on and in connection with:

- On-line retail store services featuring downloadable videos in the field of gay male adult entertainment (Class 35);
- Video-on-demand transmission services; video broadcasting; electronic, electric, and digital transmission of voice, data, and images, all in the field of gay male adult entertainment (Class 38); and
- Entertainment services, namely, providing a website featuring non-downloadable video, photographs, images, audio, and text in the field of gay male entertainment via a global computer network (Class 41) (the "Mark").

7.     However, the Examining Attorney refused Licensing IP's registration on the ground that it was likely to be confused with Registration No. 3,555,161, for the mark JUICY in connection with "entertainment services, namely, providing sexually explicit video programming via cable, satellite and global interactive networks".

8.     After the Examining Attorney made the refusals final, Licensing IP's predecessor appealed the Examining Attorney's refusal to register the Mark.

Mitchell
Silberberg &
Knupp LLP

6760072.1

**COMPLAINT FOR APPEAL AND DE NOVO REVIEW OF DECISION
OF TRADEMARK TRIAL AND APPEAL BOARD**

9.      On February 3, 2015, the TTAB issued its decision, affirming the Examining Attorney's refusal to register the mark. A copy of the decision is attached as Exhibit A.

10.      The TTAB erred in its conclusion.  The TTAB should not have affirmed the Examining Attorney's refusal to register the mark and concluded that there was a likelihood of confusion between the Mark and Registration No. 3,555,161 for the mark JUICY, including, without limitation, because (1) the services at issue are not sufficiently related; (2) the marks at issue are not are not sufficiently similar; and (3) it did not give sufficient weight to the extensive third party use of "juicy" trademarks.

11.      Pursuant to 15 U.S.C. § 1071(b)(1), and as a result of the TTAB's erroneous decision to refuse registration of Licensing IP's mark, Licensing IP is entitled to *de novo* review, based upon  the evidence of record and any additional evidence to be introduced into the record of this matter.

## V.      CAUSE OF ACTION
## COUNT I

12.      Licensing IP incorporates the preceding paragraphs 1-11 as though fully set forth herein.

13.      Licensing IP is dissatisfied with the decision of the TTAB affirming the refusal of the Examining Attorney to register the Mark and its erroneous conclusion that the Mark is likely to be confused with Registration No. 3,555,161.

14.      The TTAB decision of February 13, 2015 should be reversed and vacated, and an order should be entered directing the USPTO to register Applicant's Mark as a trademark on the Principal Register based upon U.S. Trademark Application Serial No. 85/396049.

Mitchell
Silberberg &
Knupp LLP

6760072.1

4

**COMPLAINT FOR APPEAL AND DE NOVO REVIEW OF DECISION
OF TRADEMARK TRIAL AND APPEAL BOARD**

# VI.   <u>REQUEST FOR RELIEF</u>

Wherefore, Licensing IP requests the following relief:

25.     That the Court reverse the TTAB's February 13, 2015 decision in the matter of *In re Manwin Licensing International Sàrl.* regarding Application Serial No. 85/396049 referenced herein, pursuant to 15 U.S.C. § 1071(b);

26.     That the Court declare the Licensing IP is entitled to registration of the Mark on the Principal Register based upon U.S. Trademark Application Serial No. 85/396049;

27.     That the Court order the USPTO to register the Mark on the Principal Register based upon U.S. Trademark Application Serial No. 85/396049, pursuant to 15 U.S.C. § 1119; and

28.     Any and all other relief that the Court deems just and proper.


DATED: April 3, 2015                    MITCHELL SILBERBERG & KNUPP LLP



By:   /s/ Alexa L. Lewis
      Marc E. Mayer
      Alexa L. Lewis
      Attorneys for Plaintiff,
      LICENSING IP INTERNATIONAL S.AR.L.

Mitchell
Silberberg &
Knupp LLP

6760072.1

5

**COMPLAINT FOR APPEAL AND DE NOVO REVIEW OF DECISION
OF TRADEMARK TRIAL AND APPEAL BOARD**

1

## DEMAND FOR JURY TRIAL

2

3

Plaintiff requests a jury for all issues so triable.

4

DATED: April 3, 2015          MITCHELL SILBERBERG & KNUPP LLP

5

6

By:   /s/ Alexa L. Lewis

7

Marc E. Mayer

Alexa L. Lewis

8

Attorneys for Plaintiff,

LICENSING IP INTERNATIONAL S.AR.L.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6760072.1

**COMPLAINT FOR APPEAL AND DE NOVO REVIEW OF DECISION
OF TRADEMARK TRIAL AND APPEAL BOARD**

# EXHIBIT A

# EXHIBIT A

> **THIS OPINION IS NOT A PRECEDENT OF THE TTAB**

Mailed:
February 3, 2015

## UNITED STATES PATENT AND TRADEMARK OFFICE

———

### Trademark Trial and Appeal Board

———

In re Manwin Licensing International Sàrl

———

Serial No. 85396049

———

Alexa L. Lewis of Mitchell, Silberberg & Knupp, LLP for Manwin Licensing International Sàrl.

Eli J. Hellman, Trademark Examining Attorney, Law Office 112 (Angela Bishop Wilson, Managing Attorney).

———

Before Seeherman, Taylor and Wellington, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Manwin Licensing International Sàrl has appealed from the final refusal of the Trademark Examining Attorney to register JUICYBOYS, in standard characters, for the following services:

> On-line retail store services featuring downloadable videos in the field of gay male adult entertainment (Class 35);

> Video-on-demand transmission services; video broadcasting; electronic, electric, and digital transmission of voice, data, and images, all in the field of gay male adult entertainment (Class 38); and

Ser. No. 85396049

> Entertainment services, namely, providing a website featuring non-downloadable video, photographs, images, audio, and text in the field of gay male entertainment via a global computer network (Class 41).[1]

Registration has been refused pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark so resembles the mark JUICY, in standard characters, registered for "entertainment services, namely, providing sexually explicit video programming via cable, satellite and global interactive networks" in Class 41,[2] that as used in connection with Applicant's identified services, it is likely to cause confusion or mistake or to deceive.

As a preliminary matter, we point out that the application, when it was briefed on appeal, was for services in Classes 38, 41 and 42. The Class 38 and 41 services were as indicated above, and the Class 42 services were identified as "providing a website allowing users to download videos in the field of gay male adult entertainment." After the appeal was briefed and ready for decision the Examining Attorney requested remand because, *inter alia*, he believed that the identification of services in Class 42 was indefinite and was beyond the scope of the services set forth in the original application. The request for remand was granted, and Applicant ultimately amended the application to delete the services in Class 42 and to add the services in Class

---

[1]   Application Serial No. 85396049, filed August 11, 2011. The application asserts first use and first use in commerce in February 2011 for the services in each class.
[2]   Registration No. 3555161, issued December 30, 2008; Section 8 affidavit accepted; Section 15 affidavit acknowledged.

2

Ser. No. 85396049

35. We presume that this was treated as merely a reclassification and rewording of the Class 42 services, because the Examining Attorney accepted the amendment, something that would not have been allowed if the identification broadened the services as they had been identified in Class 42. Nor did the Examining Attorney request remand to submit evidence regarding the issue of likelihood of confusion with respect to the services identified in Class 35; again this indicates that the Class 35 services are effectively the same as the services that had been erroneously classified in Class 42. After the amendment and reclassification of services, supplemental briefing on the issue of likelihood of confusion with respect to the Class 35 services was allowed.[3]

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also, In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

We first consider the *du Pont* factor of the similarity of the services, guided by the well-established principle that the respective goods or services do not have to be identical or even competitive in order to find that there is a likelihood of confusion; rather, it is sufficient that the respective goods or

---

[3] Although the Board order allowing supplemental briefing limited such briefing to the Class 35 services, the Examining Attorney's supplemental appeal brief discussed the issue with respect to all three classes of services. In accordance with the Board's December 15, 2014 order, any arguments in the supplemental brief regarding the services in Classes 38 and 41 have not been considered.

Ser. No. 85396049

services are related in some manner, or the conditions surrounding their marketing are such that they will be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that they originate from the same source. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012). The services identified in the cited registration are "entertainment services, namely providing sexually explicit video programming via cable, satellite and global interactive networks." Applicant's services, although some are listed in different classes, are virtually identical; to the extent that they are not identical, by their very nature they are closely related. That is, Applicant's entertainment services in Class 41 are providing a web site by which non-downloadable video can be viewed. This is essentially the same as the registrant's entertainment services of providing video programming via global interactive networks, such that these entertainment services must be considered legally identical.[4] Applicant's video-on-demand transmission services, broadcasting services and electronic, electric and digital transmission services in Class 38 are similar to the registrant's providing sexually explicit video programming via cable, satellite and global interactive networks. Although the services are described in somewhat different terms, with the focus of Applicant's services on the transmission of the content, and

---

[4]  Applicant has argued that there is no evidence that the registrant's services are used in connection with the Internet. Request for reconsideration, p. 5, supplemental brief, 16 TTABVUE 14. However, the language of the identification in the registration, stating that the video programming is provided via "global interactive networks," would encompass providing the services via the Internet.

4

Ser. No. 85396049

the focus of the registrant's services on the provision of the content that is transmitted, the similarity of the services, and their complementary nature, is obvious. The relatedness of the services is further shown by the fact that Applicant provides both types of services, not only in connection with the applied-for mark, but for other marks, as evidenced by its registration No. 4228853 for MEN.COM for video-on-demand transmission services  and video broadcasting in Class 38 and entertainment services, namely, providing a website featuring non-downloadable video, photographs, images, audio, and text in the field of adult entertainment via a global computer network in Class 41.

Applicant's Class 35 services of providing on-line retail store services featuring downloadable videos and the registrant's Class 41 services are also, based on their identifications alone, highly similar. Applicant's identification, in fact, is really another way of describing the registrant's services, since both services involve video programming provided via the Internet. As with the Class 38 services, the real difference in Applicant's Class 35 services and the registrant's services is the focus of the services, with Applicant's being described as "on-line retail store services" in order for them to qualify for classification in Class 35, while the registrant's are described as entertainment services in order to qualify as services in Class 41. However, consumers are not going to consider such nuances regarding classification, or consider the distinction between videos that are bought and downloaded from

**Exhibit A, Page  11**

Ser. No. 85396049

the Internet or those that are watched on a computer. To consumers, the services will be essentially the same.

Because of the complementary nature of Applicant's video-on-demand, video broadcasting, and electronic, electric and digital transmission services, and its providing on-line retail store services featuring downloading of videos, and the registrant's service of providing programming, we find that Applicant's Class 35 and Class 38 services are related to the registrant's services. In further support of this conclusion, we note that the Examining Attorney has submitted numerous third-party registrations to show the relatedness of the Class 38 and Class 41 services. These registrations list both services of the type described in Applicant's application in Class 38 and those in the cited registration. See, for example:

> Registration No. 4056014 for, video-on-demand transmission services (Class 38) and provision of non-downloadable films and television programmes[5] via a video-on-demand service (Class 41);

> Registration No. 4145272 for, *inter alia*, video-on-demand transmission services via the internet and streaming of audio, visual and audiovisual material via a global computer network in Class 38 and education and entertainment services namely, providing a website featuring informational, non-downloadable audio and visual presentations in particular fields, providing a website featuring audio and visual content [including motion pictures and videos in particular fields] in Class 41;

> Registration No. 4152802 for, *inter alia*, broadcasting services and provision of telecommunication access to video and audio content featuring adult entertainment provided via a video-on-demand service via the Internet in Class 38, and production of

---

[5] Despite the British spelling, the registrant is Sears Brands, LLC, an Illinois company, and the registration reflects use of the mark in commerce.

Ser. No. 85396049

DVDs, videotapes and television programs featuring adult
entertainment, providing an online adult website featuring
videos in the field of adult entertainment, digital media namely
a website featuring adult entertainment, and entertainment
services in the nature of providing a website on the global
computer networks featuring entertainment in the field of adult
entertainment in Class 41;

Registration No. 4090498 for, *inter alia*, video streaming
services via the Internet in Class 38 and provision of non-
downloadable films and movies via a video-on-demand service in
Class 41;

Registration No. 4146707 for, inter alia, cable television
broadcasting services, provision of telecommunication access to
video and audio content provided via video-on-demand,
interactive television, pay per view and pay television
subscription services, streaming of video and audio material via
the Internet in Class 38 and provision of non-downloadable
films, movies and television programs via an online video-on-
demand service in Class 41; and

Third-party registrations which individually cover a number of different

items and which are based on use in commerce serve to suggest that the

listed goods and/or services are of a type which may emanate from a single

source. *See In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783 (TTAB 1993).

We note that only three of the third-party registrations include Class

35 services of the nature of Applicant's identified Class 35 services, and also

include services similar to those of the registrant, to wit:

Registration No. 4145084 for, *inter alia*, retail store services
available through computer communications featuring ... gift
certificates for downloadable films and downloadable television
programs (Class 35); video-on-demand transmission services
(Class 38); and entertainment services in the nature of an
ongoing internet IPTV (Internet Protocol Television) segment in
[various fields, including adult entertainment], provision of non-

Ser. No. 85396049

downloadable films, and television programmes[6] via a video-on-demand service (Class 41);

Registration No. 3748782 for, *inter alia*, computerized on-line retail store and ordering services in the field of adult sexual aids, … pre-recorded media featuring theatrical films in the nature of … adult films … in Class 35; video on demand transmission services in Class 38 and entertainment services, namely, distribution of … adult entertainment … via a global communications network, cable television, satellite and television broadcasting in Class 41; and

Registration No. 3884412 for, *inter alia*, online retail store services in the field of pre-recorded media featuring audio, visual and multi-media recordings featuring adult entertainment in Class 35; broadcasting programs via the internet in Class 38; and entertainment services, namely providing a website featuring videos, film clips, photographs, multimedia materials, magazines, and television programs in the field of adult entertainment.

Three third-party registrations would normally not be a sufficient basis on which to find the services to be related. *Cf. In re Federated Department Stores Inc.,* 3 USPQ2d 1541, 1542 n.2 (TTAB 1987) ("we must assume that the three excerpts selected provide the best support of the Examining Attorney's refusal to register available from that source."); *see also, In re Homes & Land Publishing Corp.,* 24 USPQ2d 1717, 1718 (TTAB 1992); *In re The Monotype Corp. PLC,* 14 USPQ2d 1070, 1071 (TTAB 1989). However, we do not rely solely on these third-party registrations. Rather, as we have discussed, it is the nature of the services that causes us to find them related, and the three third-party registrations merely bolster that conclusion.

---

[6]   Although the identification uses the British spelling of "programmes," the registration indicates that the mark was used in commerce for the services.

**Exhibit A, Page  14**

Ser. No. 85396049

We recognize that Applicant has specifically limited the content of its services to gay male adult entertainment, while the registrant's identification refers more generally to "sexually explicit" video programming. Applicant has submitted evidence to show that the registrant's programming would appeal to heterosexual men, and argues that because the consumers for the respective services are different, there is no likelihood of confusion. The problem with this argument is that we must determine the issue of likelihood of confusion based on the services as they are identified in the application and cited registration, rather than what the evidence shows the services to be. *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997). The registrant's services are broadly identified as providing sexually explicit video programming, without any limitation as to the specific nature of the sexually explicit material; therefore, they would encompass sexually explicit gay male adult entertainment, the same subject matter of Applicant's services.

Because Applicant's Class 35 and 38 services are highly similar to the registrant's services, and its Class 41 services are legally identical, the *du Pont* factor of the similarity of the marks favors a finding of likelihood of confusion. Further, because legally identical services must be deemed to travel in the same channels of trade, and because the consumers of Applicant's Class 35 and Class 38 services would be the same consumers for the registrant's Class 41 services which, as identified, would include gay male

9

**Exhibit A, Page  15**

Ser. No. 85396049

adult entertainment, this *du Pont* factor also favors a finding of likelihood of confusion.

We next consider the *du Pont* factor of the similarity of the marks, which analysis also includes consideration of the strength of the cited registration, and the number and nature of similar marks in use for similar goods and services.

We first consider the evidence of third-party registrations. Third-party registrations are not evidence that the marks depicted therein are in use, or that the public is familiar with them. *See In re Albert Trostel & Sons Co.*, *supra*. However, they may be used in the manner of dictionary definitions, to show that a term has a particular significance for the goods or services at issue. *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (CCPA 1976) ("[A]lthough third-party registrations are entitled to little weight on the question of likelihood of confusion where there is no evidence of actual use, they may be given some weight to show the meaning of a mark in the same way that dictionaries are used."), quoted in *In re Mighty Leaf Tea*, 601 F.3d 1342, 94 USPQ2d 1257, 1259 (Fed. Cir. 2010). Applicant has submitted over 140 third-party registrations for marks containing the word JUICY (Exhibit 1 to request for reconsideration filed February 28, 2013, pp. 7-150). However, the vast majority of these registrations are for goods and services

**Exhibit A, Page  16**

Ser. No. 85396049

very different from the services at issue herein,[7] and therefore have little value in showing the significance of JUICY for these services. In fact, there are only two third-party registrations for goods having a sexual theme, i.e., Registration No. 3253669 for JUICY SUSHI for inflatable life sized dolls used in sexual activity and adult sexual aids, and Registration No. 4279349 for JUICY LUBE for personal lubricants. Two registrations would normally not be sufficient to show that a term has a particular significance, but Applicant has also submitted dictionary definitions for "juicy" which include "3 b: SENSATIONAL, RACY <a juicy scandal> c: full of vitality: LUSTY."[8] Coupled with the dictionary definitions, these registrations suggest that when JUICY is used in connection with adult videos and services related thereto, it would convey those dictionary meanings.

Applicant has also submitted excerpts from seven third-party adult-oriented websites that include the word juicy or have this word in their URLs:[9]

> URL is xxxjuicy.com. Webpage has JUICY ENTERTAINMENT used in the manner of a trademark or trade name, with the text: Juicy Entertainment has over ten years experience providing quality entertainment to adult industry patrons. A straightforward approach to business, plus insight into consumer trends made Juicy a leader in the production and distribution of adult movies. … With a massive library, Juicy Entertainment delivers sexy and erotic content on an array of

---

[7]  See, for example, Registration No. 3539085 for NATURALLY JUICY for fruit juices, Registration No. 3144935 for JUICY SOUR TWISTS for candy, and Registration No. 1910385 for THICK 'N JUICY for meat patties.
[8]  Merriam-webster.com, submitted with June 8, 2012 response, p. 14.
[9]  Submitted with June 8, 2012 response.

**Exhibit A, Page 17**

Ser. No. 85396049

delivery platforms for even the most unique and discerning tastes.
p. 18.

URL is juicygals.com and the portion of the webpage submitted prominently features JuicyGals.com, and includes the text "Porn Tube Movies-Most Popular Categories"
p. 20

URL is JUICYCLIPS.COM, and the text prominently features "JUICYCLIPS.COM - Daily Free Porn Movies"
p. 21

URL is juicydvd.com, and the term JUICYDVD.COM is featured in the portion of the webpage submitted, which also includes the text "Your Favorite Adult DVD Library"
p. 23.

URL is juicyvideos.com, and the portion of the webpage submitted features JUICY VIDEOS in the manner of a trademark, and the words "Free Porn Videos-Popular Categories"
p. 20

URL is juicynetwork.com, but webpage does not include the word JUICY; rather it has JN CAM2CAM EROTIC WEB CAM NETWORK.
p. 19

URL is hotmovies.com, the webpage excerpt has a shield/crest device that contains a heart with the words JUICY CHICKS, phrases in the excerpt include "streaming videos" and "downloadable content."
p. 22

Significant third-party usage of a particular term in trademarks can result in a conclusion that consumers will look to other elements of a mark to distinguish one mark from another. However, the evidence of third-party use submitted by Applicant is not sufficient for us to reach such a conclusion in this case. First, the last two excerpts do not show use of JUICY as a

Ser. No. 85396049

trademark; the juicynetwork.com webpage does not even reference the word JUICY except in the URL, while in the hotmovies.com excerpt JUICY CHICKS in the heart design is likely to be viewed as merely informational rather than as a trademark. Thus, we are left with, at most, five instances of JUICY used in what are arguably third-party marks used in the field of adult entertainment.[10] However, there is no real evidence as to public exposure of even these five marks, or that the public would be familiar with them, and therefore would be used to distinguishing between the five based on other elements. Obviously these marks or usages are accessible through the Internet, and therefore could be found by someone doing a search for them, but the mere fact that the websites can be found on the Internet does not mean that the public would be aware of them. As our primary reviewing court said in another context, "It is indeed remarkable to see the thoroughness with which NEXIS can regurgitate a placename casually mentioned in the news." *In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 3 USOQ2d 1450, 1451 (Fed. Cir. 1987). Similarly, given that so many companies have websites, the mere fact that a website can be found in which a particular word is used in a trademark does not mean that the public is familiar with that trademark.

---

[10]  We give no probative value to the third-party usage of JUICY marks for goods and services in different fields, e.g., JUICY COUTURE for fashion apparel, JUICY FRUIT for gum, JUICY JUICE for fruit juice. See Exhibit 7 to June 8, 2012 response, pp. 31-44.

Ser. No. 85396049

Applicant has attempted to show public awareness of these third-party uses by submitting traffic reports from the website www.alexa.com regarding the JUICY websites.[11] This evidence, however, fails to persuade us that consumers are familiar with these various JUICY trademarks. For example, the Alexa report on juicyvideos.com states that for an unidentified three-month period (the webpages were printed on February 27, 2013), the website had a traffic rank of 30,048 in the United States, with visitors to the site spending approximately two minutes per visit.[12] There is no real information about how the Alexis.com website works, how the numbers shown in the traffic reports were obtained or calculated, or the actual number of visitors to each website. In view thereof, we find that the *du Pont* factor of the number and extent of similar marks in use on similar goods and services to be neutral. *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014), approving the Board's attaching "little importance to internet printouts referencing third-party investment groups with 'LION' in their name, stating that such 'third-party evidence … generally has minimal probative value where, as here, it is not accompanied by any evidence of consumer awareness.'"

---

[11]  Some of the traffic reports are for additional websites with "juicy" in their URLS, e.g., juicyladies.com, see Exhibit 20 to request for reconsideration filed February 28, 2013, pp. 387-396, but because Applicant did not submit any webpages from these websites, we can draw no conclusions about the goods or services offered through those websites, or even whether they use JUICY trademarks.
[12]  Request for reconsideration filed February 28, 2013, pp. 177-186.

14

**Exhibit A, Page  20**

Ser. No. 85396049

Applicant has cited *In re Hartz Hotel Services Inc.*, 102 USPQ2d 1150 (TTAB 2012), in support of its statement that "the addition even of a descriptive term to the registered mark may be sufficient to overcome a challenge to registration based on likelihood of confusion." Brief, 14 TTABVUE 12. However, the facts in that case are very different from those herein, including the fact that there were a large number of third-party registrations for GRAND HOTEL for the services at issue in that case, as opposed to only two third-party registrations for JUICY marks for goods even arguably related to the services herein, let alone being for identical services, and the fact that there was actual evidence of numerous third-party uses of GRAND HOTEL marks as shown by the declaration of a private investigator.

In summary, although we give the evidence of third-party use limited probative value, based on the dictionary definitions and adoption of the term JUICY in marks in the adult entertainment field, we accept that the term JUICY has a suggestive significance, and that the cited registration is not entitled to a broad scope of protection. With that in mind, we turn to a comparison of the marks.

Applicant's mark begins with JUICY, which is the entirety of the cited mark. Applicant's mark also includes the word BOYS, while the cited mark does not. This additional word results in some differences in the marks, e.g., the additional syllables and letters of the word BOYS, and the additional sound caused by this word. However, the word JUICY in Applicant's mark is

**Exhibit A, Page  21**

Ser. No. 85396049

not affected by the addition of the word BOYS; JUICY still retains its appearance and sound and meaning. The descriptive and disclaimed word BOYS in Applicant's mark does not distinguish JUICY BOYS from JUICY, it merely serves to provide additional information about the subject matter of the services, i.e., that it is gay male adult entertainment. Consumers would not regard this term as indicating a different source of the adult entertainment services. If anything, consumers would understand JUICY BOYS to be merely a variation of the JUICY mark for such services, in which the subject matter of the services is made more explicit.

We note Applicant's argument that its mark "is a coined mark with no established definition." Brief, 14 TTABVUE 11. Applicant apparently takes this position because Applicant's mark is depicted with no space between the words JUICY and BOYS. However, it is readily apparent to anyone viewing the mark that the mark consists of these two words. Thus, we find that Applicant's mark falls under the line of case law holding that the addition of a term to a registered mark does not obviate the likelihood of confusion. See cases cited in Examining Attorney's appeal brief, 16 TTABVUE 7.

We add that in finding the marks similar we have taken into consideration the suggestive meaning of JUICY in connection with adult entertainment services, and have accorded the cited registration a more limited scope of protection as a result. However, even suggestive marks are entitled to protection against the registration of a similar mark for identical

**Exhibit A, Page  22**

Ser. No. 85396049

and closely related services, as is the case here. As previously discussed, the additional word BOYS in Applicant's mark does not result in Applicant's mark conveying an overall different meaning or commercial impression from the cited mark. Thus, in the particular fact situation we have here, with identical and closely related services, and the additional element in Applicant's mark merely providing further information about the nature of the services, the scope of protection accorded to the cited registration extends to prevent the registration of Applicant's mark.

Decision: The refusal of registration as to all three classes of services in Applicant's application is affirmed.

**Exhibit A, Page  23**